### WOOD v. MORRISSEY et al.
### No. 2858.

District Court, W. D. Louisiana, Monroe Division.

Jan. 17, 1940.

Warren Hunt, of Rayville, La., for plaintiff.

J. Fair Hardin, of Shreveport, La., for defendants.

PORTERIE, District Judge.

The petitioner, R. E. Wood, was injured on September 2, 1936, while working as a "rough neck" on the drilling rig of J. F. Morrissey, a citizen of Texas, at the time boring a well in Richland parish, Louisiana. He filed suit for $5,380 in Richland parish on September 1, 1937, joining to Morrissey, as co-defendant, the Southern Underwriters, a Texas corporation, authorized to do and doing business in Louisiana, on the ground that the latter corporation was under contract to pay any legal liability of Morrissey to Wood, the laborer, which might arise under the Workmen's Compensation Law of Louisiana. Act No. 20 of 1914.

The two defendants jointly removed the case to Federal court. Morrissey was, upon his own motion, taken out of the case, because he was a citizen of the state of Texas and was a non-resident. The Southern Underwriters answered on November 12, 1937, denying liability; particularly denying the existence of a contract. The case came for trial on April 18, 1939, at which time the plaintiff moved for an order compelling defendant "To produce in Open Court for the inspection and use on the trial hereof of any policy contract or copy thereof which it may have covering drilling operations of J. F. Morrissey on or about September 2, 1936, said operations being carried on in Richland Parish, Louisiana, whereby said defendant obligated itself to pay any legal claims arising against J. F. Morrissey in such operations." and "Any record which it may have in its possession bearing upon the question of the above coverage such as an account book of premium payments." This motion was overruled by the court as being too late—eighteen months from the filing of the answer in which the contract was denied. (Counsel stated that just at the moment, at time of trial, he had discovered the denial by defendant of the existence of a contract.)

The court felt that it may have denied some chance to the plaintiff in overruling its very belated motion for production of contract, if any, by the defendant. However, when counsel for defendant, in open court, stated there was no contract, the court was satisfied. Again, in motion for a directed verdict at the conclusion of plaintiff's case, counsel for defendant stated "no such contract ever in fact existed", which,

with the court's knowledge of the integrity of counsel, causes the court to entertain no further qualms of conscience over the matter.

Practically all the evidence of the plaintiff was, ruling strictly, inadmissible, but the court, being desirous of giving a day-laborer all opportunity possible to prove his claim, permitted the evidence, all qualified by the objections of defendant.

The plaintiff himself as a witness failed to furnish any evidence to prove that the defendant was under obligation, either tacit or written. He stated that he had never even filled a form to begin the establishment of a claim.

■ Mr. Allen Brunson, a co-worker at the drilling rig, added nothing as to proof of a contract. He stated that he went to Dr. Sartor's office with the plaintiff late in the evening of the day of the injury and that Mr. Joe Stell, a foreman at the rig, had told him to go there. The fact that Brunson himself, as he testified, had suffered an injury about one month before the date of injury to plaintiff, is immaterial and irrelevant. Besides, he was quite in doubt as to which company had paid him, and only upon pressure from the court did he state: "I think it was the Southern Underwriters. I am positive of it." However, at this particular time counsel for plaintiff indicated to the court that the records of the courthouse, where the settlement should have been recorded, would be produced in the afternoon. In the afternoon, when Mr. J. C. Salmon, Clerk of Court for Richland parish, testified, no such record of a compromise agreement was produced. "I could not find it" is what he said.

Dr. J. C. Sartor, the physician who examined plaintiff's injury, furnished no evidence as to the existence of a liability obligation by the defendant to the plaintiff. If anything, he weakened the case of plaintiff when he said: "I instructed Mr. Wood to go back and see Mr. Stell, the foreman or superintendent, and to get an order for treatment and bring it to me; some blanks or forms to fill out in the regular forms that we usually have from insurance companies to fill out."

■ The case is weakened because no blank forms were ever filled out. The fact as testified to by Dr. Sartor, that a negro wood-hauler working at the same well had been injured and upon his having attended the negro the Southern Underwriters paid his fee, is immaterial and irrelevant. A contract could not be established in this case upon such a predicate.

In connection with the evidence of the Clerk of Court, a filed record, showing a judgment by compromise, was produced, to the effect that another injured laborer had been paid by the defendant. This was dated May 27, 1936, some four months before the present accident. Liability cannot be thus established.

Mr. Warren Hunt, attorney for plaintiff, was the other witness. Whatever value his testimony has is represented by the two original letters and the copies of two letters, four exhibits in all, filed in connection with his testimony. The letter dated September 29, 1936, by Mr. J. F. Morrissey, the co-defendant and the driller herein, to Mr. Warren Hunt, is short and we quote it in full:

"Your letter is just here and I am surprised that no report was made of Mr. Woods having been injured.

"I have written to Mr. Steele and Mr. Finnell regarding this, and had informed the Southern Underwriters of Houston, Texas, who carry the compensation insurance, a few days ago that the well had been completed and that no one had been injured."

It does not prove that plaintiff was one included in the protection, granting, for the sake of argument, there was a contract of insurance liability.

■ As to the letter from Mr. J. Fair Hardin, attorney for the defendant, to Mr. Warren Hunt, the sentence "Meanwhile, we might discuss compromise, if you care to submit an offer" cannot serve as a basis to establish liability. A mere suggestion for the discussion of a compromise is inadmissible in the trial on the merits.

The other two exhibits are copies of letters, both being from Mr. Warren Hunt to the Southern Underwriters Corporation, to which letters there was no reply by the Southern Underwriters. There is nothing in either one that could begin to serve as the basis of the establishment of a contractual obligation.

Since plaintiff's case is dismissed for want of proof that the defendant was in any way liable to the plaintiff in damages for the injury supposedly suffered, it is not necessary for the court to discuss the evidence as to proof of injury, etc.

Judgment will be signed for the defendant, dismissing the case at plaintiff's cost.